989 F.2d 504
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
Raymond DELZER, United States of America ex rel., Appellant,
v.
UNITED BANK OF BISMARCK, Appellee.
 No. 92-2957.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: February 26, 1993.
Filed: March 12, 1993.
 
 Before JOHN R. GIBSON, WOLLMAN, and LOKEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Raymond Delzer appeals from the district court's[1] grant of summary judgment to defendant United Bank of Bismarck (the bank) in this qui tam action[2] under the False Claims Act, 31 U.S.C. §§ 3729-3733. We affirm.
 
 
 2
 In the autumn of 1979, Delzer and the bank discussed a possible loan to finance Delzer's grain and cattle operations. On November 1, 1979, the bank loaned Delzer $150,000 for 1980 operating expenses. The bank also loaned Delzer other amounts for other purposes. Delzer alleges that the bank orally agreed to loan him an additional $150,000 to purchase cattle. The bank denies entering such an oral agreement. Delzer later filed an application with the Farmers Home Administration (FmHA) for an emergency loan of $400,000. In a Lender's Verification of Loan Application form dated December 16, 1980 (verification form), which was submitted in conjunction with Delzer's FmHA loan application, the bank stated that it would consider making an additional loan to Delzer if he paid off the 1980 operating-expenses loan and obtained operating funds from another source. A bank employee also stated to an FmHA official in March 1981 that the bank would consider granting a loan to Delzer. In May 1981, FmHA loaned $400,000 to Delzer. Delzer used some of the proceeds from the FmHA loan to reduce the 1980 operating-expenses loan and other debts owed to the bank. Delzer did not repay in full the 1980 operating-expenses loan and did not obtain operating funds. Thus, the bank refused to lend him additional funds to purchase cattle, and, in December 1981, the bank informed FmHA that it would not loan Delzer additional funds. Without the additional loan, Delzer was unable to purchase cattle or generate enough revenue to repay the FmHA loan or the bank's 1980 operating-expenses loan. As a result, Delzer filed for bankruptcy protection and eventually lost his farm.
 
 
 3
 Delzer filed a state court action claiming breach of the alleged oral contract to loan the additional funds. That action is still pending.[3] Delzer also filed this action under the False Claims Act, claiming that the bank fraudulently obtained FmHA funds because it knew when it submitted the verification form in connection with his FmHA loan application that it had no intention of loaning the additional money to him and was merely trying to obtain repayment of the outstanding loans. The United States elected not to intervene in this action pursuant to 31 U.S.C. § 3730.
 
 
 4
 We review the district court's grant of summary judgment de novo. United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir. 1992). The statute-of-limitations portion of the False Claims Act was amended in 1986, and the bank argues on appeal that the narrower pre-amendment statute of limitations applies to Delzer's action. This contradicts the bank's position below that the post-amendment version applies. We need not decide this issue, however, because we conclude that the district court properly granted summary judgment for the bank because Delzer failed to demonstrate genuine issues of material fact regarding essential elements of his claim, i.e., whether the bank made (or caused to be made) false statements to FmHA, or submitted (or caused to be submitted) false claims to FmHA. See id. at 607-08 (plaintiff failed to demonstrate false or fraudulent claim was made).
 
 
 5
 The False Claims Act provides in relevant part that any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government" is liable for a civil penalty. 31 U.S.C. § 3729. The bank did not assert to FmHA that it would lend additional money to Delzer; it stated only that it would consider the loan. Accordingly, we conclude from the face of the verification form and the notes of George Weber, the FmHA official who met with the bank representative in March 1981, that the bank did not make a false statement to FmHA. Additionally, Weber testified in a state court deposition that he knew that the bank was merely considering granting the loan, and that the FmHA loan approval was not contingent on the bank's decision regarding the additional loan. We also conclude, on the facts before us, that there was no "false or fraudulent claim paid or approved by the Government" here: Delzer legally borrowed money from FmHA, money for which he was eligible regardless of the bank's position on granting an additional loan.
 
 
 6
 We conclude that Delzer's claims of other alleged financial misconduct on the part of the bank to the detriment of FmHA (e.g., selling equipment, retaining a mortgage interest) do not state claims under the False Claims Act because these actions do not constitute conduct proscribed by the Act.
 
 
 7
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Patrick A. Conmy, Chief Judge, United States District Court for the District of North Dakota
 
 
 [2]
 A qui tam action is brought by an informer on behalf of the state to recover civil penalties. The informer receives a portion of any penalties recovered. Black's Law Dictionary 1251 (6th ed. 1990)
 
 
 [3]
 The state district court has twice granted summary judgment for the bank, and the North Dakota Supreme Court has twice reversed and remanded. Delzer v. United Bank, 484 N.W.2d 502 (N.D. 1992); Delzer v. United Bank, 459 N.W.2d 752 (N.D. 1990)